UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

FRANK BRIGHT,

                                    Movant,

                    -v.-

UNITED STATES OF AMERICA,

                                    Respondent.

---------------------------------------------------------------

23 Civ. 4524 (KPF)
18 Cr. 56-1 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

On Christmas Eve 2014, Movant Frank Bright senselessly shot and killed

Amaury Paulino in a botched drug transaction in upper Manhattan.  It took

three years for law enforcement to investigate the shooting, and another 16

months to bring Bright to trial.  Largely due to the exceptional work of Bright's

then-counsel — Donald Yannella, Bobbie Sternheim, and Alexander Huot

(collectively, "trial counsel") — that trial ended in a hung jury despite a surfeit

of incriminating evidence.  After extensive negotiations between the parties,

Bright agreed to plead to a single count of conspiracy to commit Hobbs Act

robbery, thereby reducing his maximum sentencing exposure from life

imprisonment to 20 years' imprisonment.  Since then, however, Bright has

repeatedly suggested that he was misled by trial counsel into accepting the

plea deal.  In the latest iteration of that argument, Bright seeks to vacate his

conviction and withdraw his guilty plea pursuant to 28 U.S.C. § 2255 (the

"Section 2255 motion"); relatedly, Bright seeks bail pending the Court's

resolution of his Section 2255 motion, and alternatively seeks expedited

consideration of the motion.  For the reasons set forth in the remainder of this

Opinion, the Court denies Bright's Section 2255 motion, and denies as moot his motion for bail.

## BACKGROUND[1]

### A.    Factual Background

On December 24, 2014, Lazaro Martinez and Amaury Paulino approached John Duncan with an offer to sell oxycodone pills.  (PSR ¶ 15). From the start, the transaction was plagued by miscommunications:  Duncan sought to purchase real oxycodone pills, while Martinez and Paulino intended to sell fake pills for Duncan to resell to unsuspecting users.  (*Id.*).  Duncan then sought backup from Bright, asking that the latter "hold him down" in the event that problems arose in the transaction; Bright agreed, but opined that the pills were surely fake because of their low price.  (*Id.* ¶ 16).  The two men then agreed to rob Martinez and Paulino of the pills and of any jewelry or valuables in their possession.  (*Id.* ¶ 17).

---

[1]    Unless otherwise stated, references to docket entries in this Opinion pertain to the docket in the criminal case, *United States* v. *Bright*, No. 18 Cr. 56-1 (KPF).  Bright's Final Presentence Investigation Report is referred to as "PSR" (Dkt. #99); his trial transcript as "Tr."; his plea transcript as "Plea Tr." (Dkt. #85); his sentencing transcript as "Sent. Tr." (Dkt. #108); his opening brief in support of his Section 2255 motion as "Mov. Br." (23 Civ. 4524 Dkt. #1); his opening brief in support of his motion for bail as "Mov. Bail Br." (Dkt. #162); the Government's brief in opposition to both motions as "Gov't Opp." (Dkt. #166); and Bright's reply brief in further support of his Section 2255 motion as "Mov. Reply" (Dkt. #167).  The Court also draws facts from the declarations of Lynette C. Bright (Dkt. #159), Donald Yannella (Dkt. #164-1), Bobbi Sternheim (Dkt. #164-2), and Alex Huot (Dkt. #164-3), which are cited using the convention "[Name] Decl."

While the Court uses the term "Movant" to refer to Bright, he is also referred to in the parties' submissions as "Petitioner" or "Defendant."

Later that night, Duncan and Bright got into a car parked at 400 St. Nicholas Avenue in upper Manhattan, where Martinez and Paulino were waiting with the pills.  (PSR ¶ 19).  After Martinez handed over the pills, Bright pulled out a small-caliber handgun and demanded that Martinez and Paulino relinquish their jewelry and the contents of their pockets.  (*Id.*).  When Paulino refused, Bright shot him from behind, and he, Duncan, and Martinez then fled the scene.  (*Id.*).  Paulino first exited the car and tried to get help; when he found himself unable to do that, he returned to the car and began driving away, ultimately hitting another car and flipping over.  (*Id.* ¶ 19).  Paulino died as a result of massive internal bleeding caused by Bright's bullet piercing his heart.  (*Id.* ¶ 20).  Later, when explaining his conduct, Bright told Duncan and another friend, Eustace Francis, that he shot Paulino because Paulino "didn't respect the jux" — *i.e.*, Paulino did not respect the robbery when he refused to turn over everything he had on him.  (*Id.* ¶ 21).

## B.    Procedural History

### 1.    The Indictment and the Trial

A three-count indictment was filed on January 24, 2028.  (Dkt. #1). Count One charged Bright and Duncan with conspiracy to commit Hobbs Act robbery, and Count Two charged them with the substantive offense of Hobbs Act robbery, both in violation of 18 U.S.C. § 1951(b)(1) and (b)(3).  Count Three charged Bright and Duncan with using a firearm in connection with a crime of

violence, and in the course of that crime killing another person through use of the firearm, in violation of 18 U.S.C. § 924(j).

Trial in the matter took place from April 1, 2019, through April 9, 2019. During the trial, the Government's evidence included: (i) testimony by Martinez about the robbery and about Bright (whom he identified in a lineup) shooting and killing Paulino; (ii) testimony by Detective Mark Worthington about Martinez's lineup identification of Bright; (iii) testimony by Detective Wilfredo Acevedo about Martinez's lineup identifications of both Bright and Duncan, as well as his identification of Duncan in a photo array; (iv) testimony by Duncan about the robbery, including Bright's killing of Paulino; (v) testimony by Francis about Bright's admissions to him; (vi) security camera footage that depicted Bright and Duncan preparing for the robbery and later fleeing from the scene; and (vii) cellphone records that reflected communications between Bright and Duncan in advance of the robbery as well as the locations of their respective cellphones at relevant points in the timeline of the offense conduct.  (Gov't Opp. 4-5).[2]  Despite that evidence, the jury announced on April 9, 2019, that it could not reach a unanimous verdict, and the Court consequently declared a mistrial and scheduled a follow-up conference for April 19, 2019.  (Tr. 716-19).[3]

---

[2]    Martinez, Duncan, and Francis all testified pursuant to cooperation agreements with the Government.

[3]    While the Court was not privy to the jurors' deliberations, it observes that their task was certainly not aided by the steady stream of Bloods gang members who attended the trial in order to support Bright and to intimidate the Government's witnesses.  (*See, e.g.*, Tr. 414-15).

4

### 2.     The Parties' Post-Trial Discussions

On April 15, 2019, the Government filed a letter with the Court requesting a proposed schedule for retrial on behalf of the parties.  (Dkt. #69).  Among other things, the Government noted that it expected to seek a superseding indictment in advance of the April 19 conference.  (*Id.*).  The following day, on April 16, 2019, the Government clarified that it no longer intended to seek a superseding indictment, and that the parties would appear before the Court "to address retrial scheduling and any other matters the Court wishes to address."  (Dkt. #84 (the "April 16 Letter")).  Instead, at the April 19 conference, Bright entered a plea of guilty to Count One of the Indictment.  (*See* Plea Tr.).

It is here that the recollections of Bright and trial counsel diverge.  According to Bright, his counsel persuaded him to enter a guilty plea to Count One without letting him know of the Government's decision to forgo a superseding indictment.  (Mov. Br. 2).  In particular,

> Petitioner entered a guilty plea in this case, despite vehemently denying having been involved in the homicide charged in this case.  This Petitioner proceeded to trial on these charges aware that his sentencing exposure was Life imprisonment.  However, after being misled by his attorneys that the Government would seek a superseding indictment making it easier the second time around (after a hung jury) to convict Petitioner and secure a Life term of imprisonment, Petitioner gave in to the fear and entered a plea of guilty despite his actual innocence.  But for counsel's advice to enter a guilty plea, and avoid the certain consequences attending an imminent superseding indictment, Petitioner would never have entered a plea

of guilty and would have insisted on proceeding to trial
for a second time.

(*Id.* at 6-7).

Bright's trial counsel, who were all present at his plea, recall things

differently.  Donald Yannella recalled discussing with Bright the possibility of

the Government amending Count Three so that the predicate offense would be

a narcotics offense, instead of the robbery.  (Yannella Decl. ¶ 7).  He also

recalled a series of plea discussions with the Government and with his client in

which a guilty plea to a statutory maximum term of 25, 15, or 20 years was

discussed, with Bright ultimately agreeing to the 20-year term.  (*Id.* ¶¶ 8, 9,

14).  Yannella specifically recalled advising Bright on April 19, 2019, prior to

the court conference, that the Government no longer intended to obtain a

superseding indictment.  (*Id.* ¶ 12).  According to Yannella, Bright was also

interested in how the Government would characterize his offense conduct at

sentencing; Yannella conveyed that question to the prosecution team in

Bright's presence, and they responded that they "would argue for a sentence

based on [Bright] having committed murder and that he could not deny it."  (*Id.*

¶ 20).  Even with that understanding, Bright agreed to proceed with the guilty

plea.

Bobbi Sternheim similarly recounted post-trial discussions with Bright

about what the case would look like on retrial; the pending plea offers; and the

fact that the Government would not be seeking a superseding indictment.

(Sternheim Decl. ¶¶ 12-19; *see also id.* ¶ 18 ("Attorney Yannella informed

6

Bright that the government would not be seeking a superseding indictment.")).
Sternheim recalled the Government extending a one-time-only plea offer on
April 19, 2019, to a 20-year statutory maximum, which offer would expire once
the Court reset the trial date, which was scheduled to happen only minutes
away.[4]

Alex Huot was also present with Attorneys Yannella and Sternheim in the
meetings that preceded the April 19 plea proceeding before the Court.  (Huot
Decl. ¶¶ 8-11).  In particular, Huot recalled trial counsel advising Bright that
the Government was no longer seeking a superseding indictment.  (*Id.* ¶ 9).
Moreover, Huot recalled the plea negotiations that culminated in Bright's
decision to accept a plea with a 20-year statutory maximum.  (*Id.* ¶¶ 9-12).

### 3.    Bright's Guilty Plea

Rather than appear in court at 2:00 p.m. on April 19 as scheduled, the
parties asked the Court to delay the proceedings while they attempted to
negotiate a pretrial resolution of the matter; the resulting resolution was then
memorialized in a written plea agreement between the parties (the "Plea

---

[4]    *See also* Sternheim Decl. ¶ 52:

> With knowledge that the government would not be seeking a
> superseding indictment and knowing that a retrial would be
> scheduled that day, Bright accepted the 20-year plea to one count
> of conspiracy to commit robbery with knowledge that the
> agreement included the same negotiated provision contained in the
> March 14[, 2019 proposed plea] agreement: "As part of this plea
> agreement, the defendant admits that on December 24, 2014,
> Amaury Paulino was shot and killed during the robbery conspiracy
> charged in Count One.  In addition, the defendant waives any
> challenge to his role in the robbery and resultant murder in
> connection with sentencing."

Agreement" or "Plea Agmt." (Gov't Opp., Ex. 1)).  (*See* Plea Tr. 3 (The Court: "Mr. Bright, it is now about 25 minutes after 4:00 o'clock, and at 2:00 o'clock this afternoon, we had a conference scheduled to discuss rescheduling a trial date in this case.  I know you were present in the courtroom for that conference.  It is my understanding that today, you communicated to your attorneys your desire to have a resolution short of trial, to enter a guilty plea in this case.")).  In the Plea Agreement, the parties stipulated that on the facts of this case — including in particular Bright's admission that he shot and killed Paulino in a manner that sufficed to constitute murder under 18 U.S.C. § 1111 — Bright's offense level under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 40, and his Criminal History Category was I.  (Plea Agmt. 2-3).  These calculations would otherwise warrant a Guidelines range of 292 to 365 months' imprisonment, but the statutory maximum term of 240 months' imprisonment on Count One supplanted the Guidelines range. (*Id.* at 3).  The Plea Agreement also contained a waiver pursuant to which Bright agreed to waive his right to appeal, or to collaterally challenge, any term of imprisonment of 240 months or less.  (*Id.* at 4).

Late in the afternoon of April 19, the parties appeared before the Court for Bright's guilty plea; at no time during that proceeding did the parties discuss a superseding charging instrument, nor was Bright arraigned on any. At the beginning of the plea colloquy, the Court confirmed that Bright wished to enter a plea of guilty to Count One of the Indictment.  (Plea Tr. 3).  It then

8

explained the types of questions it would ask him during the plea proceeding, and placed him under oath with a warning that false answers could result in prosecution for perjury. (*Id.* at 5). After confirming with Bright that he was competent to enter a guilty plea, the Court reviewed with him the rights that he would waive by entering such a plea. (*Id.* at 6-16). Bright confirmed for the Court that he had "had enough of an opportunity to discuss with [trial counsel] the charge to which you intend to plead guilty today and any defenses that you might have to that charge." (*Id.* at 11).

The Court reviewed with Bright the elements of Count One and the penalties associated with that offense. (Plea Tr. 16-21). It also discussed with Bright the process of sentencing, and the facts that (i) no one could predict with any confidence what Bright's ultimate sentence would be, and (ii) Bright would not be able to withdraw his guilty plea based on mere dissatisfaction with his sentence. (*Id.* at 27). The Court then reviewed with Bright his written Plea Agreement with the Government; Bright acknowledged that he had read and discussed the Agreement with his counsel before signing it. (*Id.* at 28-29). The Court also reviewed the specifics of Bright's waiver of his appellate and collateral challenge rights. (*Id.* at 32-34).

Bright acknowledged that the Plea Agreement contained the entirety of his agreement with the Government. (Plea Tr. 34-35). Bright then allocuted that he had agreed with another person to rob oxycodone pills from two drug dealers, and that "[d]uring the robbery, Mr. Paulino was shot and killed." (*Id.*

at 35).  At the end of the proceeding, the Court accepted the guilty plea.  (*Id.* at 40).

### 4.    Bright's Sentencing

On June 12, 2019, Attorney Sternheim wrote to advise the Court that Bright had requested that trial counsel no longer represent him.  (Dkt. #87).  At a conference held on June 17, 2019, the Court asked Bright about his wish to change counsel:

> Now, sir, you will excuse me for being a little bit surprised by this because I saw the trial in this case, and I saw your attorneys pull off a rather amazing bit of defending you in the case and obtaining for you an extraordinary plea deal.  So I am surprised because I thought that you and they got along fine.

(Dkt. #89 (transcript of June 17, 2019 conference) at 4).  Bright responded that while there was not a problem with his relationship with his attorneys, "I just felt like I was misled into taking this plea deal."  (*Id.*).

In response to general questions from the Court, Bright expressed his interest in withdrawing his guilty plea, and the Court suggested the appointment of additional counsel under the Criminal Justice Act (the "CJA") to aid him in evaluating his options.  (Dkt. #89 at 5-8).  The duty CJA attorney, John Meringolo, was then appointed to assist Bright, and the Court scheduled a follow-up pretrial conference for June 26, 2019.  (*Id.* at 12-16).  At the June 26 conference, Meringolo was formally substituted in as counsel and requested additional time to consult with his client about the possibility of withdrawing his guilty plea.  (Dkt. #97 (transcript of June 26, 2019

10

conference)).  By letter filed on July 2, 2019, Meringolo asked the Court to schedule a sentencing date — and not a motion to withdraw Bright's guilty plea — and communicated Bright's thanks and appreciation to trial counsel. (Dkt. #91; *see also* Dkt. #93 (requesting sentencing date in late August)).

In the PSR, the Probation Office recommended the statutory maximum term of 240 months' imprisonment, explaining that

> Bright's deliberate actions resulted in the death of a 23-year-old.  The robbery was calculated and planned and driven by the suspicion that the drugs that were intended to be purchased were fake.  Furthermore, following the robbery and shooting, Bright told his co-defendant and another individual that he shot the victim because the victim did not respect the robbery. The defendant's actions and subsequent reasoning and/or rationale are not indicative of someone who is a "good person who made a poor decision."  Rather, they are reflective of an individual who has no regard for the value of a life.  But for the statutory 20-year maximum penalty, the defendant's Guideline range of imprisonment would have been 324 to 405 months. Accordingly, Bright has already benefited from his plea, which limited his custodial exposure and may not fully capture the severity of the defendant's criminal behavior.

(PSR, Sentencing Recommendation).  Bright, through Attorney Meringolo, filed a comprehensive sentencing submission recommending "a sentence well below the 20 year maximum."  (Dkt. #98 at 9).  The Government, for its part, recommended a sentence of 240 months' imprisonment.  (Dkt. #100).

Sentencing was held on August 21, 2019.  (Dkt. #103 (judgment), 106 (transcript of sentencing proceeding)).  Early on in the proceeding, the Court confirmed with Bright and his counsel that they had no objections to the PSR,

which included its recitation of the offense conduct. (Sent. Tr. 5-6). Similarly, at no point did the defense renew Bright's prior request to withdraw his guilty plea. After hearing from the parties and considering the statements of both Bright's supporters and his victims, the Court determined to sentence him principally to a term of 240 months' imprisonment:

> [I] am left with, as I began, Mr. Paulino is dead. Mr. Bright is the reason for it. And I understand that Mr. Bright was not the first to encounter Mr. Paulino or Mr. Martinez. And that was Mr. Duncan, the co-conspirator. My understanding of the events at trial is that once Mr. Bright became involved, the plans he had with Mr. Duncan evolved from that of a drug buy to a drug robbery. A gun was brought. And I did see a reference in the defense sentencing submission to a suggestion that Mr. Bright may have been under the influence of something at the time of the offense. But having seen videos at the trial, that doesn't seem consistent with what I saw. Everything that I saw suggested that Mr. Bright was aware of what he was doing as he was doing it.
>
> And Mr. Bright killed a man in the course of robbing him. And apparently this is because Mr. Paulino refused to submit to the demands of the robbery. He killed him on Christmas Eve. He left a child fatherless. And while I appreciate that he has apologized today, I still do not understand that Mr. Bright has fully accepted responsibility. And I'm still not sure what responsibility he has accepted.

(*Id.* at 39-40).

### 5. Bright's First Appeal and Remand

In direct contravention of his Plea Agreement, Bright filed a notice of appeal from his conviction and sentence. (Dkt. #105). Bright subsequently received a new counsel for his appeal, Paul Angioletti, who filed a brief

pursuant to *Anders* v. *California*, 386 U.S. 738 (1967), stating that after reviewing the record, counsel had concluded that there were no non-frivolous issues to be raised on appeal.  (*See* Dkt. #119 (mandate from the Second Circuit reciting history of appeal)).  The Government filed a motion for summary affirmance, citing, among other things, Bright's appellate waiver. (*See id.*).

The Second Circuit denied the *Anders* motion and granted in part the Government's motion to dismiss and for summary affirmance.  In particular, the Court of Appeals granted the motion to dismiss with respect to Bright's appeal of his terms of imprisonment and supervised release, granted the motion for summary affirmance with respect to Bright's appeal of his conviction and special assessment, and remanded the case back to this Court to impose, with greater precision than it had at the original sentencing, the special conditions of supervised release.  (Dkt. #119 at 2 ("On remand, the district court shall impose any special conditions of supervised release in open court and allow the Appellant to challenge any of those conditions if he so chooses.")).

### 6.    Bright's Motion to Withdraw His Guilty Plea

On remand, Attorney Angioletti sought to be relieved as Bright's counsel; the Court granted the motion and appointed Darren LaVerne as counsel for the proceedings on remand.  (Dkt. #121).  The Court then scheduled a limited resentencing proceeding for December 4, 2020, at which time the Court could

13

advise Bright of his special conditions of supervised release.  (Minute Entry for
November 25, 2020; *see also* Dkt. #127 (rescheduling proceeding for
January 8, 2021, in light of COVID-19 protocols); Dkt. #128 (adjourning
proceeding *sine die* because of COVID-19 protocols)).  By letter dated
November 27, 2020, Bright requested that certain of the special conditions of
supervised release not be imposed.  (Dkt. #124).  The Government requested
that the Court reimpose all of the special conditions from the original
sentencing proceeding.  (Dkt. #126).

On March 10, 2021, Bright filed a motion that in part sought to vacate,
set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, claiming that
his guilty plea had been involuntary and the product of ineffective assistance of
counsel.  (Dkt. #129).  It is here that the Court first learned of Bright's
contention that he had not been aware of the Government's decision not to
obtain a superseding charging instrument in April 2019, and that had he
known, he would not have accepted the Government's plea offer and would
instead have proceeded to trial.  (*Id.* at 4).  The Court denied that component of
the motion, noting in relevant part that Bright had not yet been resentenced,
and thus the Court lacked subject matter jurisdiction to consider a Section
2255 motion.  (Dkt. #131).

Alternatively, Bright sought to withdraw his guilty plea.  (Dkt. #129).
The Court ordered supplemental briefing from the parties on that component of
the motion (Dkt. #130), and received submissions on March 16, 2021 (Dkt.

14

#132 (Government)), and March 29, 2021 (Dkt. #133 (Bright)).  In an oral decision issued during a telephonic conference held on May 25, 2021, the Court denied Bright's motion to withdraw his guilty plea.  (Dkt. #148 (transcript of May 25, 2021 proceeding)).  The Court began its decision by considering whether the mandate issued by the Second Circuit circumscribed the Court's ability even to consider the motion to withdraw, and found that it did.  (*Id.* at 8-11).  To the extent that it had such authority, however, the Court found that Bright had failed to establish a fair and just reason for withdrawal of his guilty plea, concluding that his arguments were both untimely and foreclosed by the procedural history of the case.  (*Id.* at 12-13).  *See* Fed. R. Crim. P. 11(d)(2)(B) (requiring "a fair and just reason for requesting the withdrawal").

In *pro se* submissions filed in September 2021, Bright sought reconsideration of the Court's denial of his motion to withdraw and, alternatively, compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Dkt. #138-139).  By Order dated September 8, 2021, the Court denied both components of that motion.  (Dkt. #140).  First, the Court found no basis for reconsideration.  Because many of Bright's arguments are repeated in the instant motion, the Court reproduces its analysis below:

> To the extent Mr. Bright is renewing his motion to withdraw his guilty plea, this Court adheres to its prior conclusions that (i) arguments regarding the voluntariness of the plea were considered and rejected by the Second Circuit in the course of Mr. Bright's direct appeal; (ii) the Second Circuit's remand order to this

Court was for the limited purpose of considering and imposing special conditions of supervised release; and (iii) Mr. Bright has not shown a "fair and just reason for requesting the withdrawal," as Federal Rule of Criminal Procedure 11(d)(2) requires. (*See* Minute Entry for May 25, 2021).

Mr. Bright protests that the Court has misunderstood the procedural timeline of this case, and that he did not learn until after the appeal of his motion to withdraw — namely, an April 16, 2019 letter from the Government to the Court, copying Mr. Bright's then-counsel, in which the Government disclaimed its prior intention to seek a superseding charging instrument. (Dkt. #138 at 4). Mr. Bright further asserts that had he known of the Government's intention not to obtain a superseding charging instrument, he would have rejected the Government's plea offer and proceeded to trial. (*Id.*).

Mr. Bright made this argument previously (*see* Dkt. #129 at 4), and the Court will be more specific in rejecting it: Put simply, Mr. Bright ascribes undue importance to the Government's letter. The events relevant to Mr. Bright's challenge unfolded over a five-day period in April 2019. On April 15, the Government informed the Court and defense counsel that the Government expected to obtain a superseding indictment prior to an upcoming control date scheduled for April 19 at 2:00 p.m. (Dkt. #69). One day later, on April 16, the Government reversed course and informed the Court and defense counsel that it had decided not to seek a superseding indictment and that the parties intended to address the scheduling of Mr. Bright's trial at the April 19 control date. (Dkt. #84). On April 19, the Court was prepared to proceed with the scheduling of Mr. Bright's retrial. At or around 2:00 p.m. that day, however, the Court was informed that the Government and Mr. Bright were discussing the possibility of resolving the case by plea agreement and asked to adjourn the hearing to later that day. At or around 4:25 p.m., the parties appeared before the Court and presented a signed plea agreement. (*See* Dkt. #85). The

16

Court proceeded to accept Mr. Bright's plea to Count One of the Indictment. (*Id.*).

On the record before the Court, the contents of the Government's April 16, 2019 letter are an insufficient basis to withdraw Mr. Bright's guilty plea. The record before the Court does not allow it to determine precisely when Mr. Bright learned of the Government's April 16 letter. But the record does establish that Mr. Bright knew, or should have known, at the time he signed the plea agreement and entered his guilty plea the relevant contents of the April 16 letter — namely, that the Government would not obtain a superseding indictment in his case. The Government's April 15 letter stated that the Government expected to obtain a superseding indictment by the control date scheduled for 2:00 p.m. on April 19. (Dkt. #69). Mr. Bright did not enter his guilty plea until approximately 4:25 p.m. on April 19. (Dkt. #85). Mr. Bright therefore knew at the time he entered his guilty plea that the Government had not obtained a superseding indictment and that it intended to proceed to retrial on the existing operative indictment. Moreover, neither the parties' presentations at the plea hearing, nor the plea agreement itself, referenced a superseding indictment. (*See id.*). Accordingly, the record suggests that the Government had not, and would not, obtain a superseding indictment, and that Mr. Bright was aware of that fact at the time he entered his guilty plea.

(*Id.* at 4-6). Separately, the Court found that it lacked jurisdiction to dismiss the Indictment, and that the procedural posture of the case prevented its consideration of Bright's compassionate release motion. (*Id.* at 7-9).

### 7.   **Bright's Resentencing and Second Appeal**

The limited resentencing proceeding was held on September 22, 2021. (Dkt. #142 (transcript of September 22, 2021 proceeding)). After discussions with the parties, the Court reimposed some, but not all, of the special

conditions of supervised release it had imposed at the original sentencing, and did not otherwise modify the terms of imprisonment or supervised release.  (*Id.*; *see also* Dkt. #144 (amended judgment)).

Bright filed a second and then a third notice of appeal, challenging the Court's denial of his motion to withdraw his guilty plea and his new sentence. (Dkt. #141, 145).  New counsel, Brian Jacobs, was appointed to represent Bright on this appeal.  (*See* Dkt. #149 (mandate from the Second Circuit)).  In a summary order issued on March 13, 2023, the Court of Appeals affirmed this Court's denial of Bright's motion to withdraw and well as its resentencing. (*Id.*).

As noted earlier, this Court had doubted its ability to consider Bright's motion to withdraw his guilty plea in light of the limited remand from the Second Circuit.  The Second Circuit effectively punted on the issue, assuming that this Court could have considered the motion on remand, while concluding that the Court did not abuse its discretion in denying the motion on the merits. (Dkt. #149 at 3 n.4).  Here, too, the Second Circuit's findings are presented in greater detail because of their potential relevance to Bright's Section 2255 motion:

> The District Court denied Bright's motion on the grounds that, *inter alia*, it was "very, very untimely," having been made almost two years after his plea; that Bright "had multiple opportunities at earlier stages to make the very arguments that he makes now;" and that he "ascribe[d] undue importance to the Government's" April 16 Letter. A-197, 224.  These determinations manifest no abuse of discretion.

> As to Bright's alleged unawareness of the April 16 Letter — the root of his claim that his plea was not "voluntary" — Bright does not contest his awareness of the April 15 Letter and the Government's stated intent therein to seek a superseding indictment in advance of the April 19 hearing. Nor does Bright contest that the Government did not have a superseding indictment at the April 19 hearing. Thus, it was entirely reasonable for the District Court, which presided at the April 19 hearing, to conclude that Bright therefore "knew at the time he entered his guilty plea that the Government had not obtained a superseding indictment" and that the Government "would not[] obtain a superseding indictment." A-225. On that basis, the District Court acted well within its discretion in concluding that Bright failed to show a "fair and just reason" in March 2021 to withdraw a guilty plea entered almost two years earlier.

(*Id.* at 4-5; *see also id.* at 4 n.5 (noting that crux of issue was not when Bright discovered the April 16 Letter, but when he knew of its contents)). At the conclusion of the summary order, the Second Circuit found that to the extent Bright was appealing from the denial of his ineffective assistance of counsel claim, as distinguished from his denial of his motion to withdraw, it would decline to hear the claim so that it could be raised in a Section 2255 motion. (*Id.* at 5 n.6).

### 8.    The Instant Motions

Bright filed the instant motion on May 30, 2023. (23 Civ. 4524 Dkt. #1; *see also* Dkt. #159 (supporting declaration of Lynette C. Bright)). Upon receipt, the Court issued an order addressing Bright's waiver of the attorney-client privilege. (Dkt. #152; *see also* Dkt. #156 (Bright's written waiver)). Thereafter, the Court directed each of Bright's trial counsel to provide sworn testimony

concerning the allegations in the instant motion (Dkt. #158), which they did by filing individual declarations on August 25, 2023 (Dkt. #164).

While the motion was pending, Bright filed an emergency motion for bail or for expedited resolution of the Section 2255 motion.  (Dkt. #162).  The Government filed a combined opposition to the two motions on September 1, 2023.  (Dkt. #166).  Bright then filed his reply on September 12, 2023.  (Dkt. #167).

## DISCUSSION

**A.    Applicable Law**

**1.    Motions Under 28 U.S.C. § 2255**

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  However, the grounds for such a collateral attack under Section 2255 are much more limited than those available on a direct appeal. *See United States* v. *Addonizio*, 442 U.S. 178, 185 (1979).  Relief may lie "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States* v. *Bokun*, 73 F.3d

8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962));
*accord Cuoco* v. *United States*, 208 F.3d 27, 30 (2d Cir. 2000).

In ruling on a motion under 28 U.S.C. § 2255, the district court is
required to hold a hearing "[u]nless the motion and the files and records of the
case conclusively show that the prisoner is entitled to no relief."  28 U.S.C.
§ 2255(b); *see also, e.g.*, *Pham* v. *United States*, 317 F.3d 178, 185 (2d Cir.
2003) (noting that 28 U.S.C. § 2255 does not permit summary dismissals of
motions that present facially valid claims).  That said, the filing of a Section
2255 motion does not automatically entitle the movant to a hearing — as, for
example, in instances in which a movant's allegations are "vague, conclusory,
or palpably incredible."  *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962).
Rather, it is within the district court's discretion to determine the scope and
nature of a hearing.  *Chang* v. *United States*, 250 F.3d 79, 85-86 (2d Cir. 2001)
("It was, therefore, within the district court's discretion to choose a middle road
[requiring a detailed affidavit from counsel] that avoided the delay, the needless
expenditure of judicial resources, the burden on trial counsel and the
government, and perhaps the encouragement of other prisoners to make
similar baseless claims that would have resulted from a full testimonial
hearing.").

### 2.   Ineffectiveness Claims on Collateral Review

One potential basis for relief under Section 2255 occurs when a
defendant has received the ineffective assistance of counsel.  A defendant in a

criminal proceeding has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages of the proceeding, including the entry of a guilty plea.  *See, e.g., Hill* v. *Lockhart*, 474 U.S. 52, 58 (1985).

In order to succeed on a claim of ineffective assistance of counsel, a movant must meet the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984).  *First*, the movant must show that his counsel's representation was deficient, falling below the objective standard of reasonableness.  *See id.* at 687-88.  During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  "This presumption is overcome only if counsel failed to act reasonably considering all of the circumstances."  *United States* v. *Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020).  A court evaluating arguments of ineffectiveness "must avoid the distorting effects of hindsight and consider the lawyer's perspective at the time the decision was made."  *Id.*  Moreover, the Second Circuit has made clear that an attorney does not provide ineffective assistance by failing to raise frivolous arguments, even where requested by a client.  *See, e.g., Weingarten* v. *United States*, 865 F.3d 48, 53 (2d Cir. 2017).

*Second*, the movant must establish that his counsel's errors resulted in actual prejudice.  *See Strickland*, 466 U.S. at 694.  A movant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.*; *see also United States* v. *Nolan*, 956 F.3d 71, 79 (2d Cir. 2020).

"A reasonable probability is a probability sufficient to undermine confidence in

the outcome." *Garner* v. *Lee*, 908 F.3d 845, 862 (2d Cir. 2018).

In the specific context of guilty pleas, the prejudice analysis "focuses on

whether counsel's constitutionally ineffective performance affected the outcome

of the plea process.  In other words, in order to satisfy the 'prejudice'

requirement, the defendant must show that there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have

insisted on going to trial." *Hill* v. *Lockhart*, 474 U.S. at 59; *see also Kovacs* v.

*United States*, 744 F.3d 44, 51-52 (2d Cir. 2014) (discussing various ways that

prejudice may be shown in guilty plea context, including a forgone decision to

proceed to trial or a more advantageous plea offer).  The defendant must

"convince the court that a decision to reject the plea bargain would have been

rational under the circumstances." *Padilla* v. *Kentucky*, 559 U.S. 356, 372

(2010).  In this regard, the Second Circuit "requires some objective evidence

other than defendant's assertions to establish prejudice." *Pham*, 317 F.3d at

182 (citing *United States* v. *Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998)).

A court is not required to conduct a *Strickland* inquiry in any particular

order.  *See Strickland*, 466 U.S. at 697.  If the defendant does not successfully

establish either the deficient performance prong or the prejudice prong, the

entire claim fails, and the remaining, unaddressed step becomes moot.  *See id.*

B.     **Analysis**

1.     **Bright's Collateral Challenge Waiver Does Not Foreclose Consideration of Claims of Ineffectiveness in Connection with His Plea**

Before addressing the merits of Bright's arguments for vacatur of his plea and conviction, the Court addresses two antecedent issues. The first is the enforceability, or not, of the waiver provision in Bright's Plea Agreement, in which Bright waived certain rights and agreed "not [to] file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Sentence of 240 months' imprisonment." (Plea Agmt. 4). During the plea proceeding, the Court drew Bright's attention to the waiver paragraph of the Plea Agreement, and confirmed Bright's waiver of his right to "to appeal, or to file a habeas petition, or to file a petition or a motion to vacate your sentence, or to seek a sentence modification if I impose a term of 240 months' imprisonment or less." (Dkt. #85 at 32-33). *See* Fed. R. Crim. P. 11(b)(1)(N) ("During [the plea colloquy], the court must inform the defendant of, and determine that the defendant understands, the following: ... (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence[.]").

It is settled law that "[a] defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is

enforceable." *Sanford* v. *United States*, 841 F.3d 578, 580 (2d Cir. 2016)
(collecting cases); *see also United States* v. *Gomez-Perez*, 215 F.3d 315, 319 (2d
Cir. 2000) ("[E]xceptions to the presumption of the enforceability of a waiver ...
occupy a very circumscribed area of our jurisprudence."). That said, courts will
"not enforce such a waiver" if "the defendant is challenging the constitutionality
of the process by which he waived those rights," such as when "the plea
agreement was entered into without effective of assistance of counsel," because
it would be a fundamental due process violation if "'the very product of the
alleged ineffectiveness'" were "used to bar a claim of ineffective assistance of
counsel." *United States* v. *Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001)
(quoting *Jones* v. *United States*, 167 F.3d 1142, 1145 (7th Cir. 1999))
(collecting cases); *see also United States* v. *Balde*, 943 F.3d 73, 93 (2d Cir.
2019) ("Challenges that typically survive appeal waivers include those asserting
that the District Court failed to comply with the important strictures of
Rule 11, which governs entry of guilty pleas.").

Nevertheless, to overcome the waiver, the defendant must present a
"meritorious" claim. *United States* v. *Monzon*, 359 F.3d 110, 118-19 (2d Cir.
2004). "A defendant's bald statements that simply contradict what he said at
his plea allocution are not sufficient grounds to withdraw the guilty plea."
*United States* v. *Torres*, 129 F.3d 710, 715 (2d Cir. 1997). "If the rule were
otherwise, a defendant who secured the benefits of a plea agreement by, *inter
alia*, knowingly and voluntarily waiving the right to [collateral attack] could

escape the fairly bargained-for … waiver by the simple expedient of asserting an ineffective-assistance-of-counsel claim that had no merit." *Monzon*, 359 F.3d at 119; *see also Muniz* v. *United States*, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) ("Nonetheless, the United States Court of Appeals for the Second Circuit has clarified that a waiver of appeal rights does not become unenforceable automatically when a claim of ineffective assistance of counsel at plea is asserted.  Where the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced." (citing *Monzon*)).

In opposing Bright's Section 2255 motion, the Government makes mention of Bright's waiver of his collateral challenge rights, but does not specifically invoke waiver as a basis for denial of the motion.  (*See* Gov't Opp.). The waiver issue, however, is largely academic:  As a practical matter, the waiver provision does not bar this Court's consideration of Bright's claims of ineffectiveness here, insofar as the Court must evaluate the merits of those claims in order to determine whether the waiver would be enforceable.

## 2.    Certain of Bright's Claims Were Resolved in the Second Appeal

The second threshold issue concerns the preclusive effect, if any, of the prior findings of this Court and the Second Circuit concerning the viability of Bright's claims for withdrawal of his guilty plea.  To review, this Court rejected Bright's argument that he had demonstrated a fair and just reason for withdrawal of his guilty plea based on his claimed lack of awareness of the

April 16 Letter; in addition to finding it untimely, the Court rejected the claim

on the merits, observing that Bright knew for certain at the time of his guilty

plea on April 19, 2019, that the Government would not be seeking a

superseder.  (Dkt. #140 at 4-6).  The Second Circuit upheld this Court's factual

findings and its decision to deny Bright's motion to withdraw, leaving only his

claim for ineffective assistance of counsel at his plea.  (Dkt. #149 at 5 n.6; *see*

*also id.* at 5 (Second Circuit acknowledging that it had reviewed the remaining

arguments raised by Bright on appeal and found them to be "without merit")).

The Court pauses to note the evolution of Bright's arguments, or at least

the Court's understanding of his arguments, for withdrawal of his guilty plea.

As Bright originally framed these arguments, the Court understood the primary

issue to be his knowledge of the fact that the Government had elected not to

obtain a superseding charging instrument, and the Court framed its response

accordingly.  (*Compare* Dkt. #129 (original Section 2255 motion), *with* Dkt.

#148 (transcript of May 25, 2021 oral decision denying motion to withdraw)).

Bright clarified his position on appeal to the Second Circuit, explaining that the

significant issue was whether he was aware of the specific contents of the

April 16 Letter at the time of his guilty plea.  (*See, e.g.*, *United States* v. *Bright*,

No. 21-2453 (2d Cir.), Appellant's Brief 21 ("[T]he fact that Bright knew no

superseding indictment had been filed at the time of his plea does not mean

Bright knew the Government had no intention of filing a superseding

indictment if the plea did not go through."); *see also id.* at 37 ("If Bright lacked

27

the information that the Government was not going to seek a superseding indictment, he could not have 'weigh[ed] his options rationally'; he was not even aware of what his options were." (internal citation omitted))).  Because both arguments for withdrawal of his plea — Bright's knowledge that no superseder was forthcoming *and* that the Government would not seek to supersede irrespective of Bright's decision to plead guilty — were presented to and rejected by the Second Circuit on direct appeal, Bright cannot now seek to relitigate them through the vehicle of a Section 2255 motion.  *See United States* v. *Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) ("It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" (quoting *Cabrera* v. *United States*, 972 F.2d 23, 25 (2d Cir. 1992))); *United States* v. *Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack[.]"); *Rodriguez* v. *United States*, No. 14 Civ. 4628 (CSH), 2017 WL 6404900, at *11 (S.D.N.Y. Dec. 13, 2017) (noting that ineffectiveness claims may be precluded by the mandate rule when the claim's "factual predicates were impliedly rejected by the appellate court mandate, even if the assistance claim asserted on habeas had not been expressed in those terms on direct appeal"), *aff'd*, 767 F. App'x 160 (2d Cir. 2019) (summary order).

### 3.   Bright Has Not Demonstrated Deficient Performance

What remains after the second mandate from the Second Circuit is the question of whether Bright received the ineffective assistance of his trial counsel in connection with his plea.  (*See* Dkt. #149 at 5 n.6 ("To the extent that Bright appeals the District Court's denial of his ineffective assistance of counsel claim as distinct from the District Court's denial of his Rule 11 motion, we 'decline to hear the claim, permitting [Bright] to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255.'" (internal citation omitted)).  Beginning with the deficient performance prong of the *Strickland* analysis, the Court observes that, as suggested by the preceding section, the Second Circuit's affirmance of this Court's denial of Bright's Rule 11 motion would seem to foreclose any finding that trial counsel was somehow ineffective in allowing Bright to plead guilty.  In other words, Bright's trial counsel cannot be tasked with deficient performance for allowing him to plead guilty, where both the District Court and the Second Circuit found that Bright had failed to articulate a fair and just reason to withdraw his plea.

More pointedly, however, this Court accepts the sworn statements of prior counsel that they *did* advise Bright, before his decision to plead guilty, that the Government had decided not to obtain a superseding indictment.  (*See* Yannella Decl. ¶¶ 10-12; Sternheim Decl. ¶¶ 17-18, 52, 55; Huot Decl. ¶ 9).[5]  It

---

5   Bright offers countervailing evidence from his mother, who avers that she and her son both "were under the impression that unless he accepted the Government's plea offer, a superseding indictment would be returned."  (Lynette C. Bright Decl. ¶ 4).  According to Ms. Bright, only when she consulted PACER did she learn of the Government's April 16

is also noteworthy that Bright disclaimed any desire to withdraw his guilty plea until after he was sentenced by the Court.  (Dkt. #91 (requesting sentencing date instead of schedule for motion for withdraw)).  For all these reasons, the Court rejects Bright's current assertions that he pleaded guilty "despite vehemently denying having been involved in the homicide charged in this case" (Mov. Br. 6), because counsel misled him into believing that the Government would obtain a superseding indictment that would make it easier to obtain a conviction and would result in a term of life imprisonment.[6]

Bright's remaining claims about the assistance he received in connection with his guilty plea also fail to satisfy the deficient performance prong.  In his Section 2255 motion, Bright suggests that he was "actual[ly] innocen[t]" of his offense of conviction.  (*See, e.g.*, Mov. Br. 7).  His plea allocution, made under penalty of perjury, puts the lie to that contention.  *See generally Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a

---

Letter, which she then passed on to her son.  (*Id.* ¶ 7).  Ms. Bright also appears to have surreptitiously recorded a conversation with one of Bright's trial counsel, who stated, in substance, that Bright's guilty plea had obviated the need for a superseding indictment.  (*Id.* ¶ 6).  Even were the Court to credit Ms. Bright's averments, they would not alter the Court's conclusion.  Ms. Bright cannot speak to her son's knowledge, and, not being present for Bright's pre-plea meetings with trial counsel, cannot refute their sworn statements that they advised him of the Government's decision.  As for Ms. Bright's recorded conversation, counsel's answer is factually correct, and does not undermine counsel's sworn statements.  Had Ms. Bright wanted to further the record, she could have asked counsel specifically if they told her son of the contents of the April 16 Letter prior to the plea.  Finally, the Court notes that Ms. Bright claims not to have known of the April 16 Letter until after Bright's sentencing, though Bright intimated that he had been "misled" by trial counsel as early as June 2019.

[6]    Under both the Indictment and the contemplated superseding indictment, Bright was subject to a life sentence if convicted of the charge under 18 U.S.C. § 924(j).  The Court understands Bright's point to be that a jury would find it easier to convict him of that charge if the predicate offense were a drug trafficking crime rather than a crime of violence.

strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  Before his guilty plea, Bright was specifically advised by the Government that it would argue at sentencing that he committed murder with respect to Amaury Paulino and that Bright could not deny that fact.  (Yannella Decl. ¶ 20).  In open court, Bright admitted that he had "agreed with another person to rob oxycodone pills from two drug dealers," and that "[d]uring the robbery, Mr. Paulino was shot and killed."  (Plea Tr. 35).  Bright also pleaded guilty pursuant to a Plea Agreement — which he acknowledged reading and understanding at the time of his plea (*id.* at 29) — in which he stipulated that he personally had "shot and killed Amaury Paulino under circumstances that would constitute murder under 18 U.S.C. § 1111" (Plea Agmt. 2).  And at sentencing, Bright offered no objections to a PSR that specifically recited that he shot Paulino, resulting in the latter's death.  (PSR ¶¶ 19-20; Sent. Tr. 5 (noting no objections to PSR)).

Separately, Bright claims that trial counsel erred in failing to seek dismissal of Count One, which Bright claims inadequately pleads a Hobbs Act robbery offense.  (Mov. Br. 9-11).  According to Bright, Count One was required to specify the object of the robbery, which was necessary to demonstrate that the robbery had an effect on interstate commerce.  (*Id.*).  This argument, however, misses the mark.  "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge

against which he must defend, and, second, enables him to plead an acquittal
or conviction in bar of future prosecutions for the same offense.'" *United States*
v. *Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling* v. *United States*,
418 U.S. 87, 117 (1974)); *see also id.* ("[A]n indictment need 'do little more than
to track the language of the statute charged and state the time and place (in
approximate terms) of the alleged crime.'" (citation omitted)).

Count One of the Indictment charged:

> In or about December 2014, in the Southern District of
> New York and elsewhere, FRANK BRIGHT, a/k/a
> "Frankie," and JOHN DUNCAN, a/k/a "Balla," a/k/a
> "Moreno," the defendants, together with others known
> and unknown, unlawfully and knowingly did combine,
> conspire, confederate, and agree together and with each
> other to commit robbery, as that term is defined in Title
> 18, United States Code, Section 1951(b)(1), and would
> and did thereby obstruct, delay, and affect commerce
> and the movement of articles and commodities in
> commerce, as that term is defined in Title 18, United
> States Code, Section 1951(b)(3), to wit, BRIGHT and
> DUNCAN agreed to commit a gunpoint robbery of two
> individuals in New York, New York.

(Dkt. #1). Count One tracks the language of the relevant statute; it contains
the elements of the offense; and it sufficiently informed Bright of the charge
against him. This Court would have denied a motion to dismiss the charge as
frivolous, and trial counsel was therefore not ineffective in failing to bring such
a motion.

### 4.    **Bright Has Not Demonstrated Prejudice**

Because Bright fails to satisfy the deficient performance prong of the
*Strickland* analysis, the Court need not tarry long on the prejudice prong.

Bright asserts that he would have proceeded to trial had counsel advised him of the Government's decision.  Here, too, the Court finds such revisionist history to be unworthy of belief.  Each of Bright's three trial counsel advised him that a retrial would be difficult, and that the Government would likely improve its presentation of the evidence at any retrial.  (*See* Yannella Decl. ¶ 11 ("We discussed how prosecutors typically amend their trial strategy to counter or eliminate defenses that had worked well at the first trial."); Sternheim Decl. ¶ 58 ("Counsel did not tell Bright that he definitely would be convicted at a retrial and definitely would receive a life sentence, but counsel did explain why the government typically gains an advantage over the defense at a retrial which could enhance the possibility of a guilty verdict and result in a very severe sentence."); Huot Decl. ¶ 8 ("Speaking from experience, Mr. Yannella and Ms. Sternheim discussed advantages the government would have at a retrial, the possibility the government would call a witness who did not testify at the first trial, and the prospect of a plea disposition.")).  The Court itself observed that trial counsel's efforts in obtaining a hung jury at the first trial were nothing short of "amazing."  (Dkt. #89 at 4).  And through dogged negotiations, counsel obtained for Bright a plea to a 20-year maximum possible term of imprisonment, rather than the 40-year maximum that had earlier been sought by the Government or the life maximum specified by Count Three.  Put simply, Bright would not have fared better at a second trial and was fortunate to resolve his case in the manner that he did.  He recognized his good fortune at

the time, and that is why he accepted the plea offer on April 19, 2019.  That is also why Bright refrained from challenging his plea until after sentencing.  His current expressions of buyer's remorse do not suffice to state a claim of ineffectiveness as to his prior counsel.

## CONCLUSION

For the reasons stated above, the Court DENIES Bright's motion to vacate, set aside, or correct his sentence, and DENIES AS MOOT Bright's motion for bail pending resolution of the motion.  Because Bright has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c).  The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to docket this Opinion in both cases listed in the caption; to terminate all pending motions and adjourn all remaining dates in both cases; to close Case No. 23 Civ. 4524; and to mail a copy of this Opinion to Bright at the address of record in Case No. 23 Civ. 4524.

SO ORDERED.

Dated:      October 31, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

34